IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTINA MADDOX,

       Plaintiff,

v.

       Case No. _____

THOMSON REUTERS (TAX &
ACCOUNTING) INC.,

       Defendant

## COMPLAINT

Plaintiff CHRISTINA MADDOX ("Plaintiff"), by and through counsel,
brings this action under the Age Discrimination in Employment Act of 1967,
as amended ("ADEA"), 29 U.S.C. § 621, *et seq*.; Title VII of the Civil Rights
Act of 1964, 42 U.S.C.§ 2000e, *et seq*., as amended ("Title VII"); the Civil
Rights Act of 1991; and Georgia law against Defendant THOMSON
REUTERS (TAX & ACCOUNTING) INC. ("Defendant" or "Thomson
Reuters"), showing as follows:

## PARTIES, JURISDICATION, VENUE, &
## PROCEDURAL PREREQUISITES TO SUIT

1.

Plaintiff is a citizen of the United States and resides in Hall County, Georgia.  Plaintiff was born in February 1962.  Plaintiff is a woman.

2.

Defendant is a Texas corporation authorized and registered to do business in the State of Georgia and doing business in the State of Georgia, including the Northern District of Georgia.  Defendant's registered agent in the State of Georgia is Corporation Service Company, and Defendant's registered address in the State of Georgia is 40 Technology Parkway South, Suite 300, Norcross, Gwinnett County, Georgia 30092, within the Atlanta Division of the Northern District of Georgia.  LR 3.1.A. and App. A, I NDGa.

3.

Defendant may be served with process through its registered agent in the State of Georgia.

4.

This Court has subject matter jurisdiction for the claims in this action under the ADEA, Title VII, and the Civil Rights Act of 1991 pursuant to 28 U.S.C.A. § 1331, 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 626(c).

5.

This Court has supplemental jurisdiction over Plaintiff's claims under Georgia law for intentional infliction of emotional distress, negligence, punitive damages, and attorney's fees pursuant to 28 U.S.C. § 1367(a) because those claims are so related to claims in this action under federal statutes that they form part of the same case or controversy.

6.

Additionally, this Court has jurisdiction over Plaintiff's claims under Georgia law for intentional infliction of emotional distress, negligence, punitive damages, and attorney's fees on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Plaintiff and Defendant are citizens of different states, and the sum in controversy exceeds $75,000.00.

7.

Defendant is subject to the personal jurisdiction of this Court.

8.

Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3), and LR 3.1.B. NDGa.

9.

Defendant is a corporation engaged in an industry affecting commerce which has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.  Defendant is an employer as defined by the ADEA.  29 U.S.C. § 630(b).  Defendant is an employer as defined by Title VII.  42 U.S.C. § 2000e(b).

10.

Plaintiff has satisfied all conditions precedent to jurisdiction and filing this action.  Plaintiff filed a Charge of Employment Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting discrimination on the basis of age and sex within 180 days of the discriminatory acts forming the basis of Plaintiff's claims.  The EEOC issued Plaintiff Notice of Right to Sue (Issued upon Request) on July 28, 2020, a true and accurate copy of which is attached hereto as Exhibit A.  Plaintiff files this action within 90 days of her receipt of the Notice of Right to Sue.

FACTUAL ALLEGATIONS

11.

Defendant initially hired Plaintiff in 1990 as an Account Manager. In or about 1995, Plaintiff was promoted to a Key Account Manager. In 2002, Plaintiff was promoted to a Sales Account Manager. In 2007, Plaintiff was

promoted to the Area Sales Manager for the Enterprise Market Division of Defendant, managing the largest region of Thomson Reuters' Corporate Large Divisions. In January in 2019, Plaintiff was promoted to the Area Sales Manager for the Eastern U.S. Large Corporate Market Segment.  In total, Plaintiff worked for Defendant for almost thirty (30) consecutive years. While employed by Defendant, Plaintiff worked from her home office in Gainesville, Hall County, Georgia.

12.

Plaintiff was qualified to do her job, as exemplified through numerous achievements and commendations she received for her performance throughout her employment at Thompson Reuters. During Plaintiff's leadership, her region achieved the following:

    a. In 2019, Region lead the Nation out of 12 Regions at 100% of Goal

    b. In 2018, Region ranked first nationally out of 10 Regions at 107% of Goal

    c. In 2017, Region ranked second nationally out of 10 Regions

    d. From 2014 to 2016 Region ranked first nationally out of 12 (10 of 10, at 116%, 108%, & 124% of Goal Respectively)

    e. In 2013 Region ranked second nationally out of 15 Regions

5

     f.  In 2012 Region ranked first nationally out of 15 Regions at 109%

     g.  From 2008 to 2011 Region ranked number two region in the country.

13.

During Plaintiff's employment with Thomson Reuter she was awarded numerous commendations for her exceptional work. Plaintiff achieved the following in her time at Thomson Reuters:

     a.  In 2007, Plaintiff's, first year as a Manager, she finished 108% of Quota #2 out of 15 Regions (approximately 150 Account Managers)

     b.  Plaintiff was a Member of Achievers Club Earning Top 3% performance in 2002, 2003, 2005, 2006, and 2007

     c.  In 2006, Plaintiff was the Account Manager achieving the highest sales in the United States accounting market nationally the first year following Thomson Reuters' acquisition of PPC

     d.  Plaintiff lead a Team of 10 Sales Managers across the Eastern U.S responsible for $30 million plus in revenue: 15% new sales / 85% recurring revenue of Thomson Reuters' award winning platform, Checkpoint

e. Plaintiff earned President Board Club for exceptional sales performance against assigned year-end targets. She was a member of President Board for highest achievement, earning Club Trips in the years 1991, 1994, 1995, 1996, 1997, 2001, 2003, 2007, 2010, 2012, 2014, 2015, and most recently went to Punta Mita in 2019 for 2018 performance

f. From 1990 to 1995 Plaintiff managed a $1.7 million-dollar territory and grew by 10% each year

g. Plaintiff was selected to serve on Sales Advisory Board to represent sales force to the Executive Management Team and Marketing & Product Development team for new product developments, enhancements, pricing strategy, and product quality initiatives

h. Plaintiff was selected to an exclusive sales force of five with Thomson Reuters' compliance business managers for Fast Tax in 5 states to present and win market share against major competitors of the Public Accounting market. She worked directly with the President & CEO of Thomson Reuters Tax & Accounting

i. Plaintiff achieved 205% of year-end new sales revenue goals in Inaugural Year (1995-96) of Key Account Program by market

penetration and expansion of key account customer and new prospects

j.   Plaintiff was selected among 230 sales managers to develop global new sales and existing revenue growth in Fortune 1000 Corporations, large foreign-owned corporations, and top 500 law firms

k.   Plaintiff served as part of an exclusive sales team to launch RIA's first release of Thomson Reuters' web-based Checkpoint by traveling to each major territory to present the Product

l.   Plaintiff was awarded Thomson Reuters Sales Leadership Excellence Certification.

14.

Over the course of Plaintiff's tenure at Thomson Reuters, she was passed over for management positions several times for younger, less experienced, lower sales attainment male colleagues.

15.

Throughout Plaintiff's 29 years plus employment at Thomson Reuters, she received only positive employee evaluations. Plaintiff never received any complaints or any form of reprimand until termination of her employment on July 1, 2019.

8

16.

Defendant alleges Plaintiff's termination is justified by reason of an internal Thomson Reuters investigation concerning an e-mail dated November 28, 2018, eight months prior Plaintiff's termination, from Amanda Pilman of Ed Lloyd & Associates PLLC ("Lloyd & Associates", a Thomson Reuters customer) to Tim Player, a representative of Thomson Reuters (who reported to Plaintiff at that time), on which Plaintiff was copied. The e-mail concerned a product renewal. Following the November 28, 2018 email was a November 29, 2018 e-mail from Plaintiff to reinstate the products in question because they had expired by mistake.

17.

At the time of the e-mail exchange between Ms. Pilman and Mr. Player, Plaintiff was the Area Sales Manager for the Enterprise Market Division of Thomson Reuters. Plaintiff managed ten sales associates, each with thousands of customers in a large territory with a total value of at least $25,000,000.00. The renewal at issue on the November 28, 2018 e-mail involved a very small account, likely generating less than $3,000.00, representing less than .01% of Plaintiff's territory. Plaintiff had no individual relationship with the customer on the subject account.

18.

On or about June 27, 2019, Thomson Reuters opened an internal investigation on Plaintiff regarding the November 28, 2018 e-mail.

19.

Upon the initiation of the investigation, Plaintiff contacted Human Resources to ask who advocates for employees and whether she should obtain an attorney.  Human Resources directed that Plaintiff speak with her supervisor, Marc Mehlman, with whom Plaintiff spoke by telephone.  Mr. Mehlman asked how many years Plaintiff had been with the company and whether she had ever received any complaints or any form of reprimand. Plaintiff responded she had been with Thomson Reuters for 29 years and had never received any complaints or been reprimanded. Mr. Mehlman advised Plaintiff to not worry about it, just finish the quarter strong.

20.

At no point or time did the Thomson Reuters investigator indicated to Plaintiff that she was in trouble or that her job was in jeopardy.

21.

The Thompson Reuters investigator asked two questions, whether or not Plaintiff recalled a conversation with the customer and why the e-mail did not hit the Thomson Reuters server. At the time of the investigation,

eight months after the receipt of the November 28, 2018 e-mails, Plaintiff did not recall receiving the e-mail or any facts surrounding the e-mail. Plaintiff stated she knew the e-mail was in her inbox, and that she has never forged or altered a customer's e-mail in any way.

22.

Plaintiff stated that it is possible that the language in dispute ("**Please make sure our products renew!**") was an internal note to herself or others within Thomson Reuters confirming her understanding. The text format of the language in dispute is distinguishable from the remainder of the text of the e-mail.

23.

In or about June of 2019, Tim Player communicated to Plaintiff that he remembered speaking to the customer and that the customer's representative stated it wanted to renew. Tim Player stated to Plaintiff that Amanda Pilman is an administrative assistant with Lloyd & Associates and that it is not uncommon for an administrator to make an error regarding subscription renewals. Upon knowledge and belief, Mr. Player communicated all of these statements to the Thompson Reuters investigator.

24.

As of July 1, 2019, the Lloyd & Associates account had approximately seventy-five cases with various disputes.

25.

There existed no motive for Plaintiff to falsify, forge, or alter the subject e-mail.

26.

During Plaintiff's employment by Defendant, Plaintiff never fabricated or falsified customer correspondence, nor has Plaintiff ever disseminated any intentional misrepresentation.

27.

Throughout Plaintiff's employment with Thomson Reuters, Plaintiff was a dedicated, high-performing employee of Defendant.

28.

Defendant terminated Plaintiff's employment on July 1, 2019.

29.

Thomson Reuters provided Plaintiff no severance package whatsoever.

30.

Thomson Reuters has asserted that the alleged e-mail communication of November 28 and 29, 2018 amounts to sales fraud.

31.

Plaintiff neither engaged nor participated in sales fraud.

32.

There was no sales fraud associated with the November 28 or 29, 2018 e-mails.

33.

Plaintiff had no opportunity to appeal the firing, the assertion that the November 28 or 29, 2018 e-mails constituted sales fraud or any other wrongful act, or clear her name.

34.

There existed no legitimate, non-discriminatory reason for Defendant to terminate Plaintiff's employment.

35.

Defendant's assertion that it terminated Plaintiff's employment for sales fraud or any other wrongful act is pretext for unlawful discrimination.

36.

Thomson Reuters filled Plaintiff's former position with an employee approximately 23 years younger than Plaintiff.

37.

Immediately prior to termination of Plaintiff's employment, her pay included a base salary plus commissions. Plaintiff's 2019 base salary was $125,000.00, and Plaintiff received commissions and bonus based upon region performance. Plaintiff also received employment benefits including 401k, pension, disability insurance, life insurance. Plaintiff was offered health care benefits. In some years Plaintiff chose to accept them, and in other years she opted for her spouse's health care plan.

38.

Plaintiff's W-2 Box 1 income for 2016 was approximately $285,000.00, for 2017 was approximately $320,000.00, for 2018 was approximately $270,000. For January 1 – July 1, 2019, approximately half a year, Plaintiff earned approximately $253,000 in W-2 Box 1 income, with six months left in the year to earn additional salary and commission had Defendant not terminated her employment. Defendant received other benefits or compensation increasing her W-2 Box 5 income above the Box 1 income for each of those years.

39.

Plaintiff was one of eight employees of Defendant with a pension plan. Plaintiff's pension plan would have fully vested with an increase in benefits if Plaintiff had reached 30 years of employment with Defendant.

40.

Plaintiff participated in Thomson Reuters' 401k plan.  At the time of Plaintiff's termination, her 2019 year-to-date contributions were $16,611.96. Plaintiff intended to contribute approximately $32,000.00 annually to her 401k plan until her retirement.

41.

Plaintiff intended to finish her career with Defendant.  Plaintiff intended to work for Defendant through at least 2028.  Plaintiff was considering retiring at the conclusion of 2028.

42.

After Defendant's termination of her employment, Plaintiff diligently sought to secure new employment.  Defendant's assertion that Plaintiff engaged in sales fraud made more difficult Plaintiff's efforts to secure new employment.

43.

Plaintiff secured new employment beginning April 2020.  While Plaintiff is grateful for and values her new employment, Plaintiff's current compensation and benefits under her new employment are significantly below Plaintiff's compensation while employed in management by Defendant.

44.

Plaintiff has been unable to secure new employment with compensation and benefits similar to or exceeding the compensation and benefits she received immediately prior to Defendant's termination of her employment.

COUNT ONE

VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

45.

Plaintiff incorporates by reference paragraphs 1 through 44 of this Complaint as if set forth herein verbatim.

46.

Plaintiff was 57 years of age at the time Defendant terminated her employment.  She was in a protected class under the ADEA.

47.

Defendant terminated Plaintiff's employment.

48.

Plaintiff was well qualified for her job.

49.

Defendant replaced Plaintiff with a person substantially younger than Plaintiff.

50.

Defendant terminated Plaintiff's employment because of Plaintiff's age.

51.

Defendant has not terminated employees younger than Plaintiff for acts similar to or more egregious than the acts Defendant alleges Plaintiff engaged in.

52.

Defendant held Plaintiff to a higher standard in the terms and conditions of her employment than similarly-situated younger employees of Defendant.

53.

Defendant disciplined Plaintiff, terminating her employment, in a manner and degree Defendant has not applied to similarly-situated younger employees.

54.

Defendant's termination of Plaintiff's employment constitutes discrimination on the basis of age in violation of the ADEA.

55.

Any purported legitimate, non-discriminatory reasons Defendant proffers for terminating Plaintiff's employment are pretext for discriminating against Plaintiff based upon her age.

56.

Defendant's acts and omissions culminating in termination of Plaintiff's employment constitute unlawful and willful discrimination against Plaintiff based upon her age in violation of the ADEA.

57.

Defendant's acts and omissions culminating in termination of Plaintiff's employment constitute unlawful disparate treatment of Plaintiff because of her age.

58.

Defendant has engaged in a pattern and practice of discriminating against employees age 40 and over because of their age.

59.

As a result of Defendant's discriminatory practices, Plaintiff and other similarly-situated employees have been damaged; deprived of employment, promotion, raises, compensation, and other terms and conditions of employment; and disciplined more severely than younger employees engaging in similar or more egregious conduct.

60.

As the proximate result of Defendant terminating Plaintiff's employment on the basis of her age, Plaintiff has sustained losses of salary, commissions, bonuses, income, benefits, and promotional opportunities.

61.

Plaintiff is entitled to reinstatement of her employment with Defendant and recovery from Defendant of all back pay and benefits, raises, and promotions she would have earned but for Defendant's unlawful termination of her employment.

62.

Absent reinstatement, Defendant is liable to Plaintiff for back pay and benefits and front pay and benefits she has lost as the proximate result of Defendant discriminating against her on the basis of age in amounts to be proven at trial.

63.

Defendant's conduct as stated in this Complaint shows that Defendant willfully violated the ADEA.  Defendant knew that its conduct violated the ADEA.  Defendant's conduct shows reckless disregard for Plaintiff's rights under the ADEA.  Defendant's assertion that Plaintiff engaged in sales fraud or other wrongful conduct constitutes a deception calculated to cover up Defendant's knowing violation of the ADEA.  Plaintiff is entitled to recover from Defendant liquidated damages in an amount equal to back pay.

64.

Plaintiff is entitled to recover her costs and expenses of litigation, including attorney's fees, arising from Defendant discriminating against her on the basis of age as provided by the ADEA.

## COUNT TWO

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE CIVIL RIGHTS ACT OF 1991

65.

Plaintiff incorporates by reference paragraphs 1 through 64 of this Complaint as if set forth herein verbatim.

66.

Defendant terminated Plaintiff's employment because of Plaintiff's sex.

67.

Defendant has not terminated male employees for acts similar to or more egregious than the acts Defendant alleges Plaintiff engaged in.

68.

Defendant held Plaintiff to a higher standard in the terms and conditions of her employment than similarly-situated male employees of Defendant.

69.

Defendant disciplined Plaintiff, terminating her employment, in a manner and degree Defendant has not applied to similarly-situated male employees.

70.

Defendant's termination of Plaintiff's employment constitutes discrimination on the basis of sex in violation of Title VII.

71.

Any purported legitimate, non-discriminatory reasons Defendant proffers for terminating Plaintiff's employment are pretext for discriminating against Plaintiff based upon her sex.

72.

Defendant's acts and omissions culminating in termination of Plaintiff's employment constitute unlawful and willful discrimination against Plaintiff based upon her sex in violation of Title VII.

73.

Defendant's acts and omissions culminating in termination of Plaintiff's employment constitute unlawful disparate treatment of Plaintiff because of her sex.

74.

Defendant has engaged in a pattern and practice of discriminating against woman employees because of their sex.

75.

As a result of Defendant's discriminatory practices, Plaintiff and other female employees have been damaged; deprived of employment, promotion, raises, compensation, and other terms and conditions of employment; and disciplined more severely than male employees engaging in similar or more egregious conduct.

76.

As the proximate result of Defendant terminating Plaintiff's employment on the basis of her sex, Plaintiff has sustained losses of salary, commissions, bonuses, income, benefits, and promotional opportunities.

77.

As the proximate result of Defendant terminating Plaintiff's employment on the basis of her sex, Plaintiff has suffered emotional distress, pain, and suffering.

78.

Plaintiff had an exceptional reputation in the information technology industry until Defendant terminated her employment.  Defendant's termination of Plaintiff and assertion that Plaintiff engaged in sales fraud has damaged Plaintiff's personal and business reputation and relationships and business and employment opportunities.

79.

As the proximate result of Defendant asserting that Plaintiff engaged in sales fraud, Plaintiff has suffered emotional distress, pain, and suffering.

80.

Defendant is liable to Plaintiff for back pay and benefits and front pay
and benefits she has lost as the proximate result of Defendant discriminating
against her on the basis of sex in amounts to be proven at trial.

81.

Defendant's conduct as stated in this Complaint constitutes disparate
treatment and shows that Defendant intentionally and willfully violated Title
VII.  Defendant knew that its conduct violated the Title VII.  Defendant's
conduct shows malice or reckless disregard for Plaintiff's rights under Title
VII.  Defendant engaged in reckless acts of discrimination in (a) terminating
Plaintiff's employment and (b) asserting that Plaintiff engaged in sales fraud
or other wrongful conduct.  Defendant's assertion that Plaintiff engaged in
sales fraud or other wrongful conduct constitutes a deception calculated to
cover up Defendant's knowing violation of Title VII.

82.

Plaintiff is entitled to recover from Defendant compensatory damages
in amounts to be proven at trial pursuant under Title VII and the Civil
Rights Act of 1991.

83.

Defendant is liable to Plaintiff for Plaintiff's emotional distress, pain, and suffering arising from Defendant discriminating against her on the basis of sex in an amount to be determined by the enlightened conscious of a fair and impartial jury.

84.

Defendant is liable to Plaintiff for damages to her personal and business reputation and relationships and loss of business and employment opportunity arising from Defendant terminating Plaintiff's employment and asserting as the alleged legitimate, non-discriminatory reason for termination of Plaintiff's employment that Plaintiff engaged in sales fraud or other wrongful conduct.

85.

Plaintiff is entitled to recover from Defendant punitive damages in an amount sufficient to penalize, punish, and deter Defendant as provided by Title VII and the Civil Rights Act of 1991.

86.

Plaintiff is entitled to recover her costs and expenses of litigation, including attorney's fees, arising from Defendant discriminating against her

on the basis of sex as provided by Title VII, the Civil Rights Act of 1991, and

42 U.S.C. § 1988.

## COUNT THREE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87.

Plaintiff incorporates by reference paragraphs 1 through 86 of this

Complaint as if set forth herein verbatim.

88.

Defendant's conduct in terminating Plaintiff's employment on the basis

of unlawful discrimination and asserting that Plaintiff engaged in sales fraud

or other wrongful conduct was (a) intentional or reckless and (b) extreme and

outrageous.

89.

Defendant's termination of Plaintiff's employment on the basis of

unlawful discrimination and assertion that Plaintiff engaged in sales fraud or

other wrongful conduct has caused Plaintiff emotional distress.

90.

The emotional distress suffered by Plaintiff as a result of Defendant's

termination of Plaintiff's employment on the basis of unlawful discrimination

and assertion that Plaintiff engaged in sales fraud or other wrongful conduct was and is severe.

91.

Defendant is liable to Plaintiff for the emotional distress she has suffered as a result of Defendant's termination of Plaintiff's employment on the basis of unlawful discrimination and assertion that Plaintiff engaged in sales fraud or other wrongful conduct.

COUNT FOUR

NEGLIGENCE

92.

Plaintiff incorporates by reference paragraphs 1 through 91 of this Complaint as if set forth herein verbatim.

93.

Defendant failed to exercise ordinary care in conducting the investigation of the November 28 and 29, 2018 e-mails.

94.

Defendant failed to exercise ordinary care in supervising the investigation of the November 28 and 29, 2018 e-mails.

95.

Defendant failed to exercise ordinary care in relying upon the
investigation which Defendant engaged as to the November 28 and 29, 2018
e-mails.

96.

Defendant failed to exercise ordinary care in reviewing and scrutinizing
the alleged conclusions of the investigation of the November 28 and 29, 2018
e-mails.

97.

Defendant's purported conclusion that Plaintiff engaged in sales fraud
or other wrongful conduct is an absurdity.

98.

Defendant alleges that Plaintiff engaged in sales fraud or other
wrongful conduct by typing "Please make sure our products renew!" on a
November 28, 2018 e-mail from a customer.  Plaintiff does not recall typing
that statement.  Regardless of whether she did (as a note to herself, for
internal e-mail correspondence to confirm her understanding, or otherwise),
that language was in bold, distinguishable from the text of the customer's e-
mail, and similar to text "Also copying James as Tim does not have access to
this account" on Plaintiff's November 29, 2019 8:28 a.m. e-mail.

28

99.

There is no plausible motive for Plaintiff to have falsified the e-mail.

100.

Defendant failed to exercise ordinary care in asserting that Plaintiff engaged in sales fraud or other wrongful conduct.

101.

Each instance of Defendant's failure to exercise ordinary care stated above constitutes negligence.

102.

Plaintiff had an exceptional reputation in the information technology industry until Defendant terminated her employment, asserting that she engaged in sales fraud.  Defendant's assertion that Plaintiff engaged in sales fraud has damaged Plaintiff's personal and business reputation and relationships and business and employment opportunities.

103.

Defendant's negligence has caused Plaintiff to incur special damages including:

a.    Loss of income,

b.    Loss of benefits,

c.    Damage to Plaintiff's personal and business reputation,

d.    Damage to Plaintiff's business and employment opportunities, and

e.    Emotional pain and suffering,

for which Defendant is liable to Plaintiff.

104.

Defendant's negligence has caused Plaintiff general damages to be determined by the enlightened conscious of a fair and impartial jury, for which Defendant is liable to Plaintiff.

COUNT FIVE

PUNTIVE DAMAGES UNDER GEORGIA LAW

105.

Plaintiff incorporates by reference paragraphs 1 through 104 of this Complaint as if set forth herein verbatim.

106.

Defendant's actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

107.

Plaintiff is entitled to recover from Defendant punitive damages in an amount sufficient to punish or penalize Defendant or deter Defendant from engaging in such conduct in the future pursuant to O.C.G.A. § 51-12-5.1.

## COUNT SIX

## ATTORNEY'S FEES UNDER GEORGIA LAW

108.

Plaintiff incorporates by reference paragraphs 1 through 107 of the Complaint as if set forth verbatim herein.

109.

Counsel for Plaintiff gave Defendant written notice of Plaintiff's assertions of discrimination, first in October 2019, and an opportunity to discuss resolution of all claims before pursuing a claim with the EEOC and before filing this lawsuit.  Plaintiff's claims remain unaddressed and unresolved.

110.

Defendant has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.  Accordingly Plaintiff is entitled to

recover her expenses of litigation, including attorneys' fees, pursuant to

O.C.G.A. § 13-6-11.

## JURY DEMAND

Plaintiff demands trial by jury to all issues so triable in this action.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(1)   Grant trial by jury;

(2)   Enter judgment in favor of Plaintiff and against Defendant for:

    a.   Back pay and benefits,

    b.   Front pay and benefits,

    c.   Damages for Plaintiff's emotional distress,

    d.   Damages to Plaintiff's personal and business reputation and business and employment opportunities,

    e.   Compensatory damages in an amount to be proven at trial,

    f.   Liquidated damages under the ADEA,

    g.   Punitive damages under Title VII and the Civil Rights Act of 1991,

    h.   Punitive damages under Georgia law, and

    i.   Plaintiff's costs and expenses of litigation, including attorney's fees;

(3)    Order that Defendant reinstate Plaintiff's employment with all promotions, raises, and benefits she would have received or to which she would have been entitled had Defendant not engaged in unlawful employment discrimination and enter judgment in favor of Plaintiff and against Defendant for all back pay and benefit, losses, and damages she incurred during the period beginning with Defendant's termination of Plaintiff's employment through reinstatement;

(4)    Grant Plaintiff all relief to which this Court finds her entitled under the ADEA, Title VII, the Civil Rights Act of 1991, and other applicable law; and

(5)    Grant Plaintiff such further relief as this Court deems just and proper.

This 26th day of October, 2020.

SMITH, GILLIAM, WILLIAMS & MILES, P.A.
Attorneys for Plaintiff

By: _____
M. Tyler Smith
Georgia Bar No. 661685

P.O. Box 1098
Gainesville, Georgia 30503-1098
(770) 536-3381
tsmith@sgwmfirm.com

## CERTIFICATE OF FONT SIZE

The undersigned counsel for Plaintiff certifies that this Complaint is prepared in Century Schoolbook font, 13 point.

This 26th day of October, 2020.

SMITH, GILLIAM, WILLIAMS & MILES, P.A.
Attorneys for Plaintiff

By: _____
M. Tyler Smith
Georgia Bar No. 661685